# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LARRY B. TAGUE, d/b/a:  Orlando
Sanford Aircraft Sales, Inc.,**

            **Plaintiff,**

**-vs-**                                                      **Case No.  6:04-cv-1513-Orl-22JGG**

**FLORIDA FISH AND WILDLIFE
CONSERVATION COMMISSION, and
TONYA GIER, Officer, individually and as
agent and employee of the Florida Fish and
Wildlife Conservation Commission,**

            **Defendants.**
_____

## ORDER

### I.  INTRODUCTION

This cause comes before the Court for consideration of Defendant Florida Fish and

Wildlife Conservation Commission's Motion to Dismiss and Memorandum of Law (Doc. No.

10), filed on November 10, 2004, to which Plaintiff, Larry B. Tague, doing business as Orlando

Sanford Aircraft Sales, Inc., responded (Doc. No. 14) on December 6, 2004, and Defendant

Tonya Gier's Motion to Dismiss or Alternatively for More Definite Statement and

Memorandum of Law (Doc. No. 11) filed on November 10, 2004, to which Plaintiff responded

(Doc. No. 15) on December 6, 2004.  Having reviewed the motions and memoranda, this Court

GRANTS Defendant Florida Fish and Wildlife Conservation Commission's Motion to Dismiss

(Doc. No. 10) and GRANTS Defendant Tonya Gier's Motion to Dismiss or Alternatively for

More Definite Statement (Doc. No. 11).

## II. BACKGROUND

**A.     The Issue**

The Florida manatee, *Trichechus manatus latirostris*, "is native to both the warm waters of Florida's coastline and inland waters."[1]  Known for their friendly nature and handsome appearance (likened to mermaids by early explorers, but  to "a cross between a seal and a walrus" by most others), manatees "are playful mammals that spend most of their time eating, resting, and endlessly searching for warmer waters."[2]   Manatees were long hunted by Florida's prehistoric indigenous populations for their meat, hides, and fat.[3]  The arrival of European settlers, though, ushered in an era where manatees were hunted to the point of exploitation.[4]  Florida passed its first manatee protection law in 1893 to restrict hunting of the gentle creatures, but continued hunting caused the population to decline.[5]  Despite early protection laws, the Florida manatee "remained threatened with extinction."[6]  The Florida Manatee Sanctuary Act (hereinafter referred to as the "FMSA"), § 370.12(2) Fla. Stat. (2005), was enacted in 1978 in order to stop the more than century-old trend of

---

[1]      Keith Rizzardi, *Toothless?  The Endangered Manatee and the Florida Manatee Sanctuary Act*, 24 Fla. St. U. L. Rev. 377, 378 (1997).

[2]      *Id.* at 382.

[3]      Florida Fish and Wildlife Research Institute, Sea Stats: Manatees–Florida's Gentle Giants 3 (June 2001), http://research.myfwc.com/products/product_info.asp?id=1544.

[4]      *See id.*

[5]      *See id.*

[6]      Rizzardi*, supra* note 1, at 378.

decreasing manatee populations.[7]  The FMSA is in large part targeted at alleviating one of the manatee's most common threats–speeding watercraft–and regulates access to and speed limits within waterways that manatees are known to frequent.[8]

Plaintiff's Complaint says that Tague was wrongfully issued a citation for operating his seaplane in a "Manatee Slow Speed Zone" in violation of Chapter 68C-22 in violation of a of the Florida Administrative Code.[9]  The question at the heart of this matter is whether "seaplane" is included in the definition of vessel such that Tague's operation of his seaplane was in violation of the FMSA.  Chapter 68C-22 is the "rule chapter" of the Florida Administrative Code  that implements the FMSA "by establishing restrictions to protect manatees from harmful collisions with motorboats and harassment. . . ."  Rule 68C-22.001, Fla. Admin. Code. (2005).  The rules say "that a *vessel* must be fully off plane and completely settled into the water" as it travels through a "Slow Speed" zone. Rule 68C-22.002(4) Fla. Admin. Code. (2005) (emphasis added).

### B.    The Complaint

For the purposes of these Motions to Dismiss, the Court accepts the following facts derived from the Plaintiff's Complaint (Doc. No. 1) as true.[10]

---

[7]      *See id.* at 377.

[8]      *See id.* at 378.

[9]      Complaint (Doc. No. 1), ¶¶ 12, 14 at 4-5.

[10]      *See Brown v. Crawford County*, 960 F.2d 1002, 1010 (11th Cir. 1992) ("[f]or a motion to dismiss to be granted, plaintiff's complaint, factually accepted as correct, must evidence that there is no set of facts entitling him to relief").

The Plaintiff, Larry B. Tague, doing business as Orlando Sanford Aircraft Sales, Inc. (hereinafter referred to as "Tague" or "Plaintiff"), lived in Sanford, Florida in Seminole County at the time the Complaint was filed.[11]  "On July 4, 2003, Plaintiff was piloting an amphibian seaplane on Lake George in Volusia County for commercial purposes," namely for "sightseeing" and "to provide . . . seaplane rides for customers."[12]

While operating the seaplane on Lake George, Tague was "confronted by Defendant [Tonya] Gier [hereinafter referred to as 'Gier'], an employee and officer with the [Florida Fish and Wildlife Conservation Commission (hereinafter referred to as the 'FFWCC')]."[13] "Gier advised Tague that he was improperly operating a 'seaplane' in a manatee sanctuary."[14]  Tague, duly licensed in the operation of seaplanes, and two additional pilots who were present aboard Tague's seaplane "advised Gier that a seaplane was not a vessel and was exempt under the [FMSA]," Fla. Admin. Code Ann. 68C-22.002 (2005), and Florida Statutes §§ 327.01, *et seq.*[15]  Gier advised Tague that he would be given a warning nonetheless.[16]  Tague acknowledged the warning and "advised Gier that he would continue

---

[11]     *See* Complaint (Doc. No. 1), ¶ 4 at 2

[12]     *Id.*, ¶ 9 at 4.

[13]     *Id.*, ¶ 10 at 4.

[14]     *Id.*

[15]     *Id.*  To be precise, Plaintiff cites "Florida Statute 327" as one of the authorities that should have exempted him from receiving a citation.  For purposes of this Order, the Court will assume that Plaintiff intended to refer to the chapter of the Florida Statutes that governs "vessel safety," Chapter 327.

[16]     *See id.*, ¶ 11 at 4.

to lawfully operate his seaplane, as it was an integral part of business."[17]  Gier issued Tague

a citation for violating the FMSA, "terminated his commercial operation, and stated 'there

goes your profits.'"[18] Plaintiff continued to tell Gier that he was innocent and that his

seaplane was exempt, that he was operating the seaplane lawfully, and that "she should

review the statute before issuing the citation."[19]  Notwithstanding Tague's pleas, Gier issued

the citation, therefore "stopping his business."[20]

Sometime after the incident, "Plaintiff contacted Gier and her supervisor at the

FFWCC and advised them that they were ruining his business and reiterated that he was

exempt under the statute."[21]  Tague alleges that he "was instructed that he would be arrested

if he operated the seaplane."[22]  Tague "was forced to store his seaplane and was prevented

from operating the same" in excess of six months.[23]

Tague pled "not guilty" to the charges against him.[24]  On December 29, 2003, the

parties appeared at a hearing before the Honorable Thomas Bevis at the Volusia County

---

[17]     *Id.*

[18]     *Id.*, ¶ 12 at 4-5.

[19]     *Id.*, ¶ 12 at 5.

[20]     *Id.*

[21]     *Id.*, ¶ 13 at 5.

[22]     *Id.*

[23]     *Id.*, ¶ 14 at 5.

[24]     *Id.*

Courthouse.[25] During the hearing, "Judge Bevis received a copy of a letter from Gier, in which she admitted she was wrong and was informed by the Office of General Counsel for the FFWCC that seaplanes were in fact exempt as Plaintiff had informed Gier and Plaintiff was not in violation of the 'Manatee Slow Speed Zone.'"[26] On January 29, 2004, all charges against Tague were dismissed.[27]

Plaintiff alleges that "by the time the charges were dismissed, [his] seaplane business was ruined as he had already lost tens of thousands of dollars and had incurred thousands of dollars in lost profits."[28]  Plaintiff further alleges that he "was forced to sell the seaplane and discontinue his seaplane sightseeing and commercial business"[29] and that the "good will image and name of his business" was damaged.[30]

On October 14, 2004, Tague filed a four-count Complaint (Doc. No. 1) against the Florida Fish and Wildlife Conservation Commission and Tonya Gier, individually and as an agent and employee of the FFWCC.  Counts One and Two allege deprivation of civil rights claims under 42 U.S.C. § 1983 against Gier and the FFWCC, respectively.  Counts Three and Four allege negligence claims under Florida law against Gier and the FFWCC, respectively.  On January 18, 2005, this Court declined to exercise supplemental jurisdiction

---

[25]     *Id.*

[26]     *Id.*

[27]     *Id.*

[28]     *Id.*, ¶ 15 at 5-6.

[29]     *Id.*, ¶ 15 at 6.

[30]     *Id.*, ¶ 21 at 8.

over Plaintiff's negligence claims and entered an Order (Doc. No. 20) dismissing without

prejudice Counts Three and Four of the Complaint.  The Plaintiff has not amended his

Complaint, and Counts One and Two remain.

In Count One Tague argues that Gier, "acting alone and in concert with other

officers of the FFWCC and . . . in the course and scope of her employment as a police

officer with the FFWCC . . . intentionally, negligently, and with complete, reckless and

callous disregard and indifference for Plaintiff . . . caused [Plaintiff] to be deprived of his

constitutional rights to property under the Fourteenth Amendment when she: (1) wrongfully

[denied Tague] the use of his seaplane," (2) infringed upon his "property interest in the

operation of his seaplane and his lawful right to profit from a legal business enterprise," (3)

precluded Tague "from engaging in lawful business in violation of the Commerce Clause of

the U.S. and Florida Constitutions," and (4) failed "to know the laws which she was hired

and swore to know and rightfully and lawfully enforce."[31]

Count Two argues that the FFWCC  intentionally, negligently, and with indifference

caused Plaintiff to be deprived of his Fourteenth Amendment by:

> [1] promulgating and/or adopting rules and regulations concerning the
> issuance of citations by members of the FFWCC which were vague,
> confusing, and contradictory; and/or [2] failing to supervise properly
> the training and conduct of officer Gier . . . [3] failing to enforce the
> laws of the State of Florida and the provisions of the Constitution of
> the United States concerning the proper issuance of citations for
> violation of the Manatee Slow Zone Act; [4] failing to properly
> enforce the written rules and regulations of the U.S. Coast Guard and
> the State of Florida concerning properly issuing and knowing when to
> issue citations for the actual violation of the Manatee Slow Zone Act,

---

[31]     *Id.*, ¶¶ 17-19 at 6-7.

> including knowing which vessels and items are exempt; and [5]
> promulgating and/or adopting rules and regulations allowing and
> permitting officers to wrongfully and unlawfully issue citations to
> citizens who had violated no laws and by continuously precluding and
> preventing those citizens from lawfully operating the vessel, or
> seaplanes.[32]

Tague argues that his damages, which include lost profits, revenue, and use of his seaplane,

storage expenses, and damage to the good will image and name of his business, are the

direct and proximate results of Defendants' actions.[33]

## C.      The Motions to Dismiss and Responses Thereto

Defendant Gier filed her Motion to Dismiss or Alternatively for More Definite

Statement and Memorandum of Law (hereinafter referred to as "Gier's Motion to Dismiss")

(Doc. No. 11) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e) on November

10, 2004.[34]   Gier  cites case law discussing the qualified immunity that shields government

officials from liability for civil damages so long as their conduct does not violate a clearly

established right of which a reasonable person would have known.  Gier argues that under

the facts alleged, Tague has failed to state a claim for violation of a clearly established law,

asserting that "[t]here is no clearly established law in Florida that Plaintiff had [a] right to

travel by seaplane, airboat, motorboat, or any other vessel over land which may be

_____

[32]      *Id.*, ¶ 23 at 8.

[33]      *Id.*, ¶¶ 21, 25 at 8-9.

[34]      Federal Rule of Civil Procedure 12(e) states, in pertinent part, "[i]f a pleading to which
a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be
required to frame a responsive pleading, the party may move for a more definite statement before
interposing a responsive pleading.  The motion shall point out the defects complained of and the
details desired.

considered a manatee sanctuary . . . [or to] operate a business there."[35]  In the alternative,

Gier contends that Plaintiff should be  required to provide a more definite statement in his

Complaint.[36]  According to Gier, Plaintiff:  (1) "failed to allege any facts suggesting how

Officer Gier may have terminated Plaintiff's business when she issued him a non-criminal

citation," (2) failed to demonstrate "why he could not continue his business in other

locations other than the one portion of Lake George which Plaintiff references in his

Complaint," and (3) "failed to allege the names of any witnesses intimidated, cite any laws

relevant to this action that the officers failed to have knowledge of or about, [or] reference

any prior instances of asserted intimidation which would have caused him to close his

business pending a hearing on a non-criminal infraction such as the one alleged in the

Complaint."[37]  Defendant Gier also argues against the exercise of supplemental jurisdiction

over Plaintiff's state law claims.[38]  As discussed *supra*, Plaintiff's state law claims  are no

longer a part of this lawsuit.  Accordingly, Gier's arguments regarding the state law claims

are moot.

   In his Response (Doc. No. 15) to Gier's Motion to Dismiss, Plaintiff asserts that the

"Federal Rules only require Plaintiff to give sufficient notice of what the claim is."[39]

---

[35]   Gier's Motion to Dismiss (Doc. No. 11), ¶ 3 at 2-3.

[36]   *See id.*, ¶ 6 at 4.

[37]   *See id.*, ¶ 6 at 4-5.

[38]   *See id.*, ¶ 7 at 5.

[39]   Plaintiff's Response to Defendant Tonya Gier's Motion to Dismiss (Doc. No. 15) at 1 (citing *Airlines Reporting Corp. v. Atlantic Service, Inc.*, 841 F. Supp. 1166 (S.D. Fla. 1993); *DiDomenico v. N.Y. Life Ins. Co.*, 837 F. Supp. 1203 (M.D. Fla. 1993); *Harris v. Iorio*, 922 F. Supp.

Plaintiff, thus, essentially argues that he need not allege detailed facts concerning how Gier may have taken steps to stop his seaplane business.[40]  Tague asserts that the "right to operate a seaplane in a manatee sanctuary was clearly established, as it was codified in the Florida Statutes."[41]   Seemingly in the alternative, Tague argues that although there may be no clearly established right in Florida to operate a seaplane, Florida's constitution embodies the clearly established right to work.[42]  Plaintiff then cites *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) for the proposition that "a public official is not entitled to qualified immunity where he or she knew or should have known that the actions taken by him or her violated a person's constitutional rights," arguing that the facts show that Gier is not entitled to qualified immunity.[43]

Defendant FFWCC filed its Motion to Dismiss and Memorandum of Law (hereinafter referred to as "The FFWCC's Motion to Dismiss") (Doc. No. 10) pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) on November 10, 2004.[44] The FFWCC argues that because the State of Florida has Eleventh Amendment immunity

---

588 (M.D. Fla. 1996)).

[40]     *Id.* at 1-2.

[41]     *Id.* at 3 (citing Ch. 327, Fla. Stat.).

[42]     *Id.* at 2.

[43]     *Id.* at 2-4.

[44]     Federal Rule of Civil Procedure 12(b) states, in pertinent part, "[e]very defense . . . to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, [and] . . . (6) failure to state a claim upon which relief can be granted."

from being sued by one of its citizens in federal court, and because Florida has not

consented to being sued in federal court, this Court lacks jurisdiction over the matter at

hand.[45]   Additionally, the FFWCC contends that because the State of Florida is "the real

party in interest," the Eleventh Amendment bars suit against the FFWCC as an agency or

subdivision of the State as well.   *See* The FFWCC's Motion to Dismiss (Doc. No. 10), ¶ 2 at

3 (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).   The FFWCC further asserts that

neither the State of Florida nor the FFWCC are "persons" subject to the jurisdiction of this

Court for purposes of a § 1983 action.   *See id.* (citing *Will v. Michigan Dept. of State Police*,

491 U.S. 58, 71 (1989); *Schrank v. Bliss*, 412 F. Supp. 28 (M.D. Fla. 1976)).   The FFWCC

also argues that it would be improper for this Court to exercise supplemental jurisdiction

over Plaintiff's state law claims.[46]   Per the Court's January 19, 2005 Order (Doc. No. 20),

the FFWCC's arguments regarding Plaintiff's state law claims are now moot.

　　　In his Response (Doc. No. 14), Tague argues that his counsel received verbal

permission to institute a lawsuit against the FFWCC from Allen Richards, a Senior Attorney

with the Office of General Counsel for the FFWCC.[47]   Tague concedes that the State of

Florida is not a "person" for purposes of a § 1983 action and now seeks to amend his

complaint to assert that "the FFWCC, through its agents Defendant Gier and her supervisor,

violated Plaintiff's due process rights by threatening him with arrest and precluding him

---

[45]　　*See* The FFWCC's Motion to Dismiss (Doc. No. 10), ¶¶ 1-3 at 1-3.

[46]　　*See id.*, ¶¶ 6-7 at 4-5.

[47]　　Plaintiff's Response to Defendant FFWCC's Motion to Dismiss (Doc. No. 14) at 1.

from operating his seaplane sightseeing business."[48]  Plaintiff also argues that "Defendants

violated Plaintiff's procedural due process rights by not waiting until after the determination

at the citation infraction hearing before threatening him with arrest if he continued to

operate the seaplane and forcing him to shut down."[49]

### III.  STANDARD OF REVIEW

**A.      The Standard of Review**

In deciding a motion to dismiss, the court must accept as true all the factual

allegations in the complaint, drawing all inferences derived from those facts in the light

most favorable to the plaintiff.  *Brown v. Crawford County*, 960 F.2d 1002, 1010 (11th Cir.

1992).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant

is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236

(1974); *Little v. N. Miami*, 805 F.2d 962, 965 (11th Cir. 1986).  A count may not be

dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can

prove no set of facts in support of a claim for relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-

46 (1957); *Lopez v. First Union Nat'l Bank*, 129 F.3d 1186, 1189 (11th Cir. 1997).  The

threshold of sufficiency that a complaint must meet to survive a motion to dismiss is

---

[48]      *Id.* at 2.  Federal Rule of Civil Procedure 15(a) allows a party to amend his or her
pleading once as a matter of course at any time before a responsive pleading is served.  Because no
responsive pleading had been filed at the time Plaintiff responded to the FFWCC's Motion to Dismiss,
no special permission from the Court would have been required for Plaintiff to have filed an amended
complaint.  Unfortunately for Plaintiff, the deadline to amend pleadings, established by the Case
Management and Scheduling Order (Doc. No. 18) as May 16, 2005, has since passed.  If Plaintiff
wanted to amend his Complaint, he should have done so either within the time provided by the
Federal Rules of Civil Procedure or before the deadline as set by the Case Management and
Scheduling Order.

[49]      *Id.*

exceedingly low.  *See Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700, 703 (11th Cir.

1985).  Nevertheless, dismissal is appropriate where a court cannot "identify each of the

material elements necessary to sustain a recovery under some viable legal theory."  *See Roe*

*v. Aware Woman Ctr. for Choice,* 253 F.3d 678, 684 (11th Cir. 2001).  Moreover, a court

should grant a motion to dismiss where the factual allegations in the plaintiff's complaint

present a dispositive legal issue precluding relief.  *See Marshall County Bd. of Educ. v.*

*Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## IV.  LEGAL ANALYSIS

**A.     Gier's Motion to Dismiss**

Qualified immunity provides a complete defense from suit and from liability for

government officials who are sued in their individual capacities for the performance of their

discretionary functions.  *See Storck v. City of Coral Springs*, 354 F.3d 1307, 1313-14 (11th

Cir. 2003).  Qualified immunity's protection exists as long as the official's conduct violates

no "clearly established statutory or constitutional rights of which a reasonable person would

have known."  *Id.* at 1313 (quoting *Lassiter v. Ala. A & M Univ., Bd. Of Trustees*, 28 F.3d

1146, 1149 (11th Cir. 1994) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)).  The purpose of qualified immunity:

> is to allow government officials to carry out their discretionary duties
> without the fear of personal liability or harassing litigation, protecting
> from suit all but the plainly incompetent or one who is knowingly
> violating the federal law.  Because qualified immunity is a defense
> not only from liability, but also from suit, it is important for a court to
> ascertain the validity of a qualified immunity defense as early in the
> lawsuit as possible.

*Storck*, 354 F.3d at 1314 (quoting *GJR Invs., Inc. V. County of Escambia*, 132 F.3d 1359, 1380 (11th Cir. 1998) (internal citations omitted)).

A qualified immunity analysis requires first that the public official prove that he or she "was acting within the scope of his [or her] discretionary function when the allegedly unconstitutional acts took place." *Storck*, 354 F.3d at 1314 (quoting *Courson v. McMilliam*, 939 F.2d 1479, 1487 (11th Cir. 1991).  Here, Gier's alleged misconduct occurred within the scope of her discretionary authority as an FFWCC officer.  Once established that the officer was acting within the scope of his or her discretionary authority, "the burden shifts to the plaintiff to establish that qualified immunity does not apply." *Storck*, 354 F.3d at 1314.

To determine whether qualified immunity applies, the Court must first ask the threshold question whether the facts alleged, taken in the light most favorable to Tague, show that the Gier's conduct violated a constitutional right.  *See Dalrymple v. Reno*, 334 F.3d 991, 995 (11th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Next, if Tague's Complaint can be said to allege the violation of a constitutional right, the Court must determine whether that right was clearly established at the time of the violation.  *See Dalrymple*, 334 F.3d at 995. Again, Tague argues in his Complaint (Doc. No. 1) that Gier's actions violated his right to engage in lawful business as guaranteed by the Commerce Clause of the United States Constitution and of the Florida Constitution and his right to property as guaranteed by the Fourteenth Amendment to the United States Constitution.[50]

---

[50]     *See* Complaint (Doc. No. 1), ¶ 19 at 7.

Tague's Complaint cannot be said to allege a violation of rights under the Commerce Clause.  Article I, Section 8 of the United States Constitution authorizes Congress "[t]o regulate Commerce . . . among the several States. . . ."  In practice, the Commerce Clause limits the actions of the States when they legislate in areas of legitimate local concern, like environmental protection and resource conservation, such that interstate commerce would not be burdened by the legislation or regulation.  *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471 (1981).  It is improper, therefore, for Tague to allege that the actions of an individual, namely Gier, violated any right to engage in business under the Commerce Clause.  Furthermore, in making his argument under the Commerce Clause, Tague points to no legislative action taken by the Florida legislature, the FFWCC, or any other body that would have impinged on his right to engage in a lawful business activity.  Additionally, the Florida Constitution contains no counterpart to the Commerce Clause of the United States Constitution. It is thus impossible for anyone to have violated his rights under that fictional Florida constitutional provision.  Accordingly, Gier is entitled to qualified immunity from Tague's claims under the Commerce Clause.

Tague's claim that he was wrongly issued the citation and that Officer Gier failed to know the laws she was swore to enforce is essentially a claim that his Fourth Amendment rights were violated.  The Fourth Amendment guarantees the right of persons to be free from unreasonable searches and seizures.  U.S. Const. amend. IV.  If Gier misunderstood the law and wrongly issued Plaintiff a citation, both her stopping of his seaplane and the issuance of the citation occurred without reasonable suspicion.  *See State of Florida v. Bell*, 873 So.2d 476 (Fla. Dist. Ct. App. 2005) ("[a]ll that is required for an investigatory stop is reasonable

suspicion to believe that the individual has committed, is committing, or is about to commit a crime") (citing *Terry v. Ohio*, 392 U.S. 1 (1968); Fla. Stat. § 901.151 (2005)).   The Eleventh Circuit has held that "a mistake of law, no matter how reasonable or understandable . . . cannot provide reasonable suspicion or probable cause to justify a traffic stop." *United States v. Chanthasouxat*, 342 F.3d 1271, 1279 (11th Cir. 2003).   The issue thus boils down to whether Gier made a mistake of law and whether the law at issue was clearly established such that the Tague's operation of his seaplane in the "Slow Speed" zone was not a violation of the Florida Manatee Sanctuary Act.

The Florida Legislature provided no definition of the word "vessel" in the "Definitions" section of Chapter 68C-22.  *See generally* Rule 68C-22.002, Fla. Admin. Code (2005).  In subsections (5), (6), (7), and (18), Rule 68C-22.002 makes reference to § 327.33 of the Florida Statutes.  Section 327.33 governs the "[r]eckless or careless operation of a vessel" and it is a subsection of the chapter in the Florida Statutes known as the "Florida Vessel Safety Law."  *See* § 327.01 Fla. Stat., *et seq.*

The "Definitions" section of the Florida Vessel Safety Law expressly defines terms as used in Chapters 327 and 328 of the Florida Statutes.  *See generally* § 327.02 Fla. Stat. (2005).  Section 327.02(37) says that "'[v]essel' is synonymous with boat as referenced in § 1(b), Art. VII of the State Constitution[51] and includes every description of watercraft, barge, and air boat, *other than a seaplane* on the water, used or capable of being used as a means

---

[51]      Fla. Const. Art. VII, Section 1(b) reads: "Motor vehicles, boats, airplanes, trailer coaches and mobile homes, as defined by law, shall be subject to a licence tax for their operation in the amounts and for the purposes prescribed by law, but shall not be subject to ad valorem taxes."

of transportation on water." (Emphasis added). Although the definition of vessel provided in

§ 327.02(37) excludes seaplanes, Chapter 327 only comes into play in limited

circumstances, namely when the fitness and/or safe operation of a vessel is at issue.

Additionally, the Florida Legislature did not make the definitions provided in Chapter 327

applicable to either Chapter 370 of the Florida Statutes or Chapter 68C-22 of the Florida

Administrative Code.  As such, the definition of vessel in Chapter 327 does not apply for

purposes of the FMSA.

     Finding no answers in the Florida Statutes, the Court now returns to the

Administrative Code in search of a definition for vessel.  Rule 68C-22.003, which is not

cited by Plaintiff, discusses regulated activities under the FMSA.  Specifically, Rule 68C-

22.003 states, in relevant part:

> (1) General Guidelines and Application Procedures: This rule sets
> forth criteria pertaining to the regulation of the speed and operation of
> vessel traffic and other activities which are otherwise prohibited by
> Chapter 68C-22, F.A.C.  Permits for such regulated activities shall be
> issued only as provided hereunder. . . .  Permits shall not be granted
> for activities within "Motorboats Prohibited" or "No Entry" zones,
> except as explicitly provided for in this section.
>
> . . .
>
> (7) Testing of Motors or Vessels by Manufacturers: The following
> provisions pertain to boat motor and vessel testing operations by
> manufacturers. As provided in subsection (1), permits shall be issued
> by the Commission only upon both a showing of justification of need
> by the applicant and a determination of an absence of serious threat to
> manatees in association with the requested activity.
>
> . . .
>
> > (c)  For the purposes of this rule, the following definitions
> > shall apply:

. . .

> 4. Vessel -- Vessel is synonymous with boat, as referenced in Section 1(b), Article VII, of the State Constitution, and includes every description of watercraft, barge, and airboat *other than a seaplane* on the water used or capable of being used as a means of transportation on water.

Fla. Admin. Code Ann. 68C-22.003 (2005)(7)(c)4 (emphasis added).  Again, the Court found a definition of vessel that excludes seaplanes; however, the definition provided in this Rule is applicable to circumstances even more limited than those in which the definition of vessel in § 327.02(37) of the Florida Statutes applies.  Essentially, Rule 68C-22.003(7)(c)4 says that the FFWCC will not require seaplane manufacturers to submit to testing during the permit application process.  There is nothing in the Florida Administrative Code that excludes "seaplane" from the definition of "vessel" for general purposes or for the more limited purpose of traveling within a manatee "Slow Speed" zone.  Even a plain language definition of the word vessel, "a hollow structure designed for navigation *in or on* the water" and "any of various *aircraft*" would seem to include a seaplane, "an airplane designed to take off from and land on the water,"  within the bounds of its meaning.  Webster's Ninth New Collegiate Dictionary 1059, 1312 (1991) (emphasis added).

Even if the Office of the General Counsel for the FFWCC later determined that seaplanes are exempt from regulation under the FMSA, a thorough reading of the statutes and rules shows that Officer Gier was not wrong for issuing Plaintiff a citation based on her understanding and interpretation of the law as it existed at the time.  The State of Florida has an important interest in protecting its wildlife, and the Florida Manatee Sanctuary Act is

integral to ensuring such protection for the gentle and ever-endangered manatee.  It cannot be said that a seaplane is exempt from the definition of vessel as found in Florida's administrative rules and statutes.  Hence, it cannot be said that the Plaintiff had a clearly established right to operate his seaplane in the manner he did in the manatee zone where he was issued the citation, or that Gier made a mistake of law in issuing him the citation.  It is up to the legislature and administrative agencies of the State of Florida to define the word "vessel."  At this juncture, Florida cannot be said to have included "seaplanes" in the definition of "vessel" for purposes of general regulation under the FMSA.  Accordingly, Officer Gier is entitled to qualified immunity.

Tague argues in the alternative in his Response (Doc. No. 15) that even if there is no clearly established right to operate a seaplane in Florida, Article 1, Section 6 of the Florida Constitution clearly establishes the right to work in Florida. Tague alleges that Gier's actions violated this right and precluded him from operating his seaplane business.[52] However, the right to work provision that Plaintiff cites is inapplicable here.  Article I, Section 6 of the Florida Constitution guarantees the rights of persons to work regardless of their "membership or non-membership in any labor union or labor organization."[53]  Mr. Tague's claims in this case do not involve the FFWCC infringing on his right to be employed while either being a member or a non-member of a labor organization.  As such,

---

[52]     Plaintiff's Response to Defendant Gier's Motion to Dismiss (Doc. No. 15) at 2-3.

[53]     Fla. Const. Art. 1 § 6 goes on to say: "The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged.  Public employees shall not have the right to strike."

Tague's constitutional right to work cannot be said to have been violated by Gier's actions, and Gier is entitled to qualified immunity on this claim as well.

**B.      The FFWCC's Motion to Dismiss**

The Eleventh Amendment to the United States Constitution generally immunizes non-consenting states from suits brought in federal courts brought by the state's own citizens as well as by citizens of other states. *See Nat'l R.R. Passenger Corp. v. Rountree Transp. & Rigging, Inc.*, 896 F. Supp. 1204, 1206 (M.D. Fla. 1995) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).   The FFWCC is an agency of the State of Florida.  *See* Fla. Stat. § 20.055.  As an agency of the State, the FFWCC likewise receives Eleventh Amendment protection against suits brought in federal court.  *See Schloper v. Bliss*, 903 F.2d 1373, 1378 (11th Cir. 1990).  "States may consent to suit or otherwise waive their Eleventh Amendment immunity, but only under certain narrow circumstances."  *Nat'l R.R. Passenger Corp.*, 896 F. Supp. at 1206 (internal citations omitted).   "[A] waiver of Eleventh Amendment immunity by state officials must be explicitly authorized by the state 'in its Constitution, statutes, and decisions.'" *Silver v. Baggiano*, 804 F.2d 1211, 1214 (11th Cir. 1986) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 467 (1945)).

The Court's research has revealed no waiver of the FFWCC's immunity in the case at hand.  In his Complaint, Tague claims that "[a]ll conditions precedent to the filing of this complaint have occurred, been satisfied, or been waived in accordance with Fla. Stat.

768.28 . . . .”[54]  While § 768.28 of the Florida Statutes waives the State's immunity in some

tort actions brought in Florida courts, subsection eighteen (18) of the statute makes it clear

that:

> [n]o provision of this section, or of any other section of the Florida Statutes . . . shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver . . . from suit in federal court.

Fla. Stat. § 768.28(18).  As such, § 768.28 affords no waiver of the FFWCC's

immunity for purposes of this federal lawsuit.

Neither does the permission to sue given by the FFWCC's Senior Attorney provide

an adequate waiver of immunity in this case.  Counsel for Tague asserts that the Senior

Attorney for the FFWCC gave him verbal permission to institute this lawsuit and that the

State of Florida thus "grant[ed] Plaintiff permission to sue it in federal court."[55]  Plaintiff's

assertion is without merit.  Even if the FFWCC "purported to waive its immunity as an

agency of the state, it was powerless to do so." *Davis v. Watson*, 318 So.2d 169, 170 (Fla.

Dist. Ct. App. 1975) (citing Fla. Const. art. 10, § 13).  In *Davis*, the court noted that the

Florida Constitution "provides that the sovereign immunity of the state may be waived by

general law." 318 So.2d at 170.  Because Florida's immunity may not be waived by special

or local law, the court in *Davis* reasoned that "the power to waive the state's immunity is

vested exclusively in the legislature." *Id.*  Therefore any verbal permission given to

---

[54]     Complaint (Doc. No. 1), ¶ 8 at 3.

[55]     Plaintiff's Response to Defendant FFWCC's Motion to Dismiss (Doc. No. 14) at 1.

Plaintiff by a representative of the FFWCC does not constitute a waiver of the agency's immunity.

Without an appropriate, clear waiver of immunity, this Court is left without jurisdiction over the FFWCC. Accordingly, Plaintiff's claims against Defendant FFWCC are dismissed.

## V.  CONCLUSION

Based on the foregoing, it is ordered as follows:

1.   Defendant Tonya Gier's Motion to Dismiss (Doc. No. 11) is GRANTED insofar as Gier is entitled to qualified immunity. Gier's Motion to Dismiss (Doc. No. 11) is DENIED insofar as it seeks a more definite statement from Plaintiff.

2.   Defendant Florida Fish and Wildlife Conservation Commission's Motion to Dismiss (Doc. No. 10) is GRANTED.

3.   This case is hereby DISMISSED with prejudice. The Clerk is directed to CLOSE the file.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on May 25, 2005.

ANNE C. CONWAY
United States District Judge